OPINION OF THE COURT
Gerald Adler, J.
Motion by the City of New York to tax and adjust the. costs and disbursements incurred by it incidental to the above-captioned “Unsafe Building” proceeding and to obtain a judgment for the amount of such costs and disbursements, such judgment to be a lien against the subject premises as provided by section C26-83.5 of the Administrative Code of the City of New York.
The factual background, in brief, is as follows:
On February 1, 1980, a five-alarm fire occurred at the subject premises, then a 12-story vacant masonry multiple dwelling located at 97 Columbia Street, Brooklyn, New *247 York, known as Hotel Margaret. The entire structure was gutted by fire leaving exterior masonry walls free standing and in imminent danger of collapse. By memo dated February 2, 1980, the Brooklyn Borough superintendent of buildings requested emergency partial demolition of the subject premises. Said emergency work was performed by Associated Wreckers, Inc., a demolition contractor working on behalf of the city, from February 2, 1980 through February 6, 1980, at a cost to the city of $35,548.66. The city is not seeking this expenditure by the instant motion because the partial demolition predated the issuance of the precept. The costs and disbursements which the city’s present motion seeks to have taxed and reduced to judgment were incurred in demolishing the premises pursuant to the command of a precept issued by this court on February 7, 1980, after personal service upon the owners and mortgagees of a “Notice of Unsafe Building” proceeding. Said precept was issued after a trial and with the consent of the respondent owners, 97 Columbia Heights Housing Corp., of which Mr. Eichner, an attorney, is president. Hartford Insurance Co., Lumber Mutual Insurance Co., and John Di Stefano Painting Co., Inc., have appeared in the instant motion and do not oppose it being granted except that Mr. Magida, attorney for Di Stefano Painting Co., Inc., requests that in the event the validity of Di Stefano’s mechanic’s lien (for painting and decorating) is established in an action to foreclose said lien, then, upon sale of the subject premises resulting from a judgment herein in favor of the city, he be given notice of sale and surplus money proceedings. At this juncture, this request is granted.
In an affidavit challenging the city’s application, Mr. Eichner, as president and representative of the 97 Columbia Heights Housing Corp., the owner of the premises, states two major contentions. His first contention is that the demolition carried out by the city pursuant to the command of the court precept was done without first advertising for bids pursuant to subdivisions 1 and 2 of section 103 of the General Municipal Law, and that this is fatal to the city’s claim to seek a judgment for money expended to pay for the demolition.
*248 The court finds no merit to this contention. Mr. Eichner overlooks subdivision 4 of section 103 of the General Municipal Law. The facts of this case clearly establish that a public emergency existed arising from the devastation of the premises by the fire and that the health, safety and property of the inhabitants of the area surrounding the premises, as well as the safety of the firemen, were affected. Immediate action was required which could not await competitive bidding. Under the circumstances, contracts could be let without competitive bidding. The city’s actions were entirely in accordance with subdivision 4 of section 103 of the General Municipal Law. Moreover, on February 4, 1980, three days after the outbreak of the fire and while firemen were still working to extinguish it, the city commenced an “Unsafe Building” proceeding pursuant to section C26-80.0 et seq. of the Administrative Code. After a trial on February 7, 1980, this court found as matters of fact that the subject premises were unsafe and dangerous and that a precept should issue directed to the superintendent of buildings commanding him, forthwith, to demolish the structure. The attorney for the respondent owner consented to the entry of the precept.
Considering the desperate urgency of the situation, the city’s demolition division substantially complied with the spirit of subdivisions 1 and 2 of section 103 of the General Municipal Law by soliciting telephone bids from four demolition contractors and awarding the contract to the lowest bidder, which was Associated Wreckers, Inc.
The second major contention stated by Mr. Eichner is that the corporate owner of the building was not afforded the opportunity, pursuant to section C26-82.5 of the Administrative Code, to perform the requirements of the precept.
This contention also lacks merit. Perusal of the record herein clearly reveals that respondent’s plan for shoring and bracing was properly rejected by the city on the ground it failed to comply with recognized engineering principles and failure by Mr. Eichner to make, on behalf of the respondent, a valid offer to perform the requirements of the precept at respondent’s own cost and expense as provided in section C26-82.5 of the Administrative Code. For the emer *249 gency demolition work prior to the issuance of the precept, the city paid Associated Wreckers $35,548.66.
Section C26-82.5 of the Administrative Code, entitled “Repair or removal under precept”, states in part: “The owner of such structure, or part thereof, or premises * * * if he applies to the superintendent immediately upon the issuing of such precept and pays all costs and expenses incurred by the city up to that time, shall be allowed to perform the requirements of the precept at his own proper cost and expense, if the performance shall be done immediately and in accordance with the requirements of such precept.” (Emphasis added.)
Respondent didn’t offer to pay this sum to the city apparently because it didn’t receive a settlement from the insurers.
In any event, if the respondent desired to shore and brace the building instead of having it demolished, it should have sought by motion, in this unsafe building proceeding, to have the court modify the decretal provisions of the precept so as to provide for shoring and bracing, or commence an article 78 proceeding to obtain judicial reversal of the commissioner’s decision. Neither legal remedy was taken. Respondent’s failure to timely seek these expeditious legal remedies may fairly be regarded as acquiescence to the demolition which it now, 20 months later, seeks to have declared unlawful.
Moreover, the court finds no merit to Mr. Eichner’s challenge to the claim of the city to include in its demolition costs five additional items of expense totaling $12,456.62. Itemized statements of each are attached as Exhibit “F” to the city’s notice of motion. The five additional charges were authorized by the contract between the city and Associated Wreckers, Inc., and were payment for work not included in the scope of the original contract. In the circumstances, this work was necessary to make certain that the demolition task was completed with proper concern for the safety of the demolition workers, the area residents and the general public.
The court has considered the other objections raised by the respondent and finds them to lack merit. Upon the *250 entire record, the city has clearly demonstrated that it entitled to the relief it seeks herein.
Accordingly, the motion is granted in all respects.